**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Ger V., | Case No. 26-cv-2543 (KMM/DTS) |
| Petitioner, | |
| v. | **ORDER** |
| Markwayne Mullin, et al., | |
| Respondents. | |

On June 2, 2026, U.S. Magistrate Judge David T. Schultz issued a Report and Recommendation ("R&R") recommending that Petitioner Ger V.'s Petition for a Writ of Habeas Corpus be granted and he be immediately released. (Dkt. 10.) Respondents object to the R&R. (Dkt. 11.) After considering the entire record, the Court accepts the R&R in part, grants the Petition, and orders Ger V.'s release.

## BACKGROUND

Ger V. is a native of Laos who entered the United States in 1982. He was convicted of felonies in both 1992 and 1995. On September 10, 2001, an immigration judge ordered his removal from the U.S. After a stint in custody, Mr. V. was released on an Order of Supervision ("OSUP") on May 1, 2002 "due to Laos not issuing travel documents." (Dkt. 6 ¶ 10.) Years later, Mr. V. attended an annual OSUP check in on March 4, 2026 and then scheduled an additional appointment to update his work authorization. Mr. V. was arrested upon appearing at that latter appointment on May 5, 2026. He was subsequently served with an "OSUP revocation form, along with I-200 and I-205 warrants" and given an

1

opportunity to respond to the reasons for his revocation. (*Id.* ¶ 11–12; *see* Dkt. 6-3 (I-200);

Dkt. 6-4 (I-205); Dkt. 6-6 (Notice of Revocation of Release).)

Mr. V. filed this Petition on May 7, 2026 raising five claims for relief. The R&R

was issued on June 2, 2026, and Respondents filed their Objections on June 4, 2026.

## LEGAL STANDARD

The Court reviews de novo any portion of the R&R to which specific objections are

made. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b)(3). In the absence of objections, the

Court reviews the R&R for clear error. *Nur v. Olmsted County*, 563 F. Supp. 3d 946, 949

(D. Minn. 2021) (citing Fed. R. Civ. P. 72(b) and *Grinder v. Gammon*, 73 F.3d 793, 795

(8th Cir. 1996) (per curiam)). District courts "may accept, reject, or modify, in whole or in

part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b);

*see also* Fed. R. Civ. P. 72(b)(3).

## DISCUSSION

A court may issue a writ of habeas corpus if a person "is in custody in violation of

the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). District

courts have authority to grant writs of habeas corpus "within their respective jurisdictions."

28 U.S.C. § 2241(a). That power "includes jurisdiction to hear habeas challenges to

immigration-related detention." *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn.

2025).

## I.    Warrants

Mr. V. raises multiple challenges to his arrest on May 5, 2026. Judge Schultz

recommended relief on one of those grounds, finding that the notice given to Mr. V. of the

reasons for revocation of his supervision were insufficient. The Court agrees with Judge Schultz that the Petition should be granted, but does so for different reasons. Finding that the operative warrant—the I-205—was both invalidly and belatedly issued and thus his arrest was unlawful, the Court adopts the recommendation of the R&R and orders Mr. V's release.[1]

### A.    Validity of the Warrants

Immigration law enumerates two primary types of warrants for immigration arrests: Form I-200 warrants (Warrant of Arrest) and Form I-205 warrants (Warrant of Removal/Deportation). Form I-200 warrants are used to detain noncitizens suspected of violating immigration law and can be issued and executed at any time between the issuance of the notice to appear and the completion of removal proceedings. 8 C.F.R.§ 236.1(b); *see Jouquin C.S. v. Bondi*, No. 26-cv-1438 (DWF/DJF), 2026 WL 483256, at *2 (D. Minn. Feb. 20, 2026) (discussing when I-200's can be issued). Form I-205 warrants are used to detain those already subject to a final order of removal. *See* 8 C.F.R. §§ 241.2 (governing issuance and execution of warrants of removal), 241.3(a) (stating that a noncitizen subject to a final order of removal "will be taken into custody pursuant to the warrant of removal"). The implementing regulations prescribe the appropriate procedure for issuing the two types of warrants. *See* 8 C.F.R. §§ 287.5(e)(2) (listing immigration officers allowed to issue an I-200 warrant of arrest), 241.2 (listing immigration officers allowed to issue a I-205 warrant of removal). In conducting immigration enforcement, executive branch agencies must

---

[1] Because the Court is granting Mr. V.'s Petition on other grounds, it does not review the reasoning of the R&R.

3

comply with these regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954).

On May 5, 2026, the day Mr. V. was arrested, he was served with both an I-200 warrant and an I-205 warrant. As an initial matter, Mr. V. cannot be arrested pursuant to an I-200 warrant because he is subject to a final order of removal.[2] 8 C.F.R. §§ 241.3(a); *Cesar F.F. v. Blanche*, No. 26-cv-2540 (PJS/DTS), Dkt. 8 at 4 (D. Minn. June 2, 2026) ("A Form I-200 warrant empowers ICE to arrest aliens *during* removal proceedings."); *Moreno v. United States*, No. 1:24-CV-245-RP, 2026 WL 1042030, at *2 n.7 (W.D. Tex. Mar. 25, 2026) ("[The United States] conceded at a hearing [that the noncitizen's] detainer should have been accompanied by a Form I-205 rather than a Form I-200, as she is someone with a final order of removal."). So, the question is whether Mr. V. was arrested pursuant to a validly issued I-205.

Unfortunately for Respondents, the I-205 was not validly issued because it was not issued by the right person. The regulation governing I-205's enumerates a list of immigration officials authorized to issue them. 8 C.F.R. § 241.2(a). Mr. V.'s I-205 warrant

---

[2] To be sure, the governing regulation states that I-200 warrants can only be used to arrest a noncitizen "up to the time removal proceedings are completed[.]" 8 C.F.R. § 236.1(b). Removal proceedings end when the "immigration judge . . . decide[s] whether an alien is removable from the United States." 8 U.S.C. § 1229a(c)(1)(A); *see United States v. Mbacke*, No. 18-CV-237-SJB, 2018 WL 3545499, at *10 (E.D.N.Y. July 20, 2018) (explaining that removal "proceedings are defined in the statute . . . as the procedure *for determining* . . . whether an alien may be . . . removed from the United States" and "[w]hen that determination has been made (and appeals concluded), the proceeding is complete") (internal quotations omitted); *see generally* 8 U.S.C. § 1229a. So, because a final order of removal had already been issued for Mr. V., that means removal proceedings were over, and he could no longer be arrested pursuant to an I-200 warrant.

4

of removal was signed by an "SDDO" "for" Respondent David Easterwood, the Acting Director of ICE's St. Paul Field Office. (Dkt. 6-4 at 1.) The acronym "SDDO" refers to an official with the role of Supervisory Detention and Deportation Officer. The issue for Respondents is, while Mr. Easterwood is himself an authorized official to issue a warrant of removal per § 241.2(a)(iii), an SDDO is not. The SDDO position is simply not enumerated in the list of authorized officials per § 241.2(a). The fact that the SDDO position *is* expressly authorized to issue I-200 warrants, *see* 8 C.F.R. § 287.5(e)(2)(xxxii), confirms their omission from the I-205 list.

When specifically prompted to address this issue, Respondents' counsel states only that the I-205 "was signed on behalf of David Easterwood by a Supervisory Detention and Deportation Officer" and that such a delegation is "allowed." (Dkt. 15 ¶ 2.) The record is silent on whether or how the SDDO in question was nonetheless "delegated the authority . . . to issue Warrants of Removal[.]" 8 C.F.R. § 241.2(a)(xxxii). Respondents fail to provide a declaration or other evidence to support that such a delegation happened here. And the fact that Mr. Easterwood did electronically sign the Notice at more or less the same time raises questions about whether the SDDO was authorized to sign the I-205 on his behalf. The Court's concerns are magnified when nowhere—whether on the warrant of removal or in Respondents' multiple filings—is the SDDO identified. The record does not support that the SDDO was validly delegated the authority necessary to sign this I-205. And Respondents offer no authority for their position that having a non-authorized officer write "for" above the name of an authorized officer is sufficient to comply with the very specific regulations at issue.

Therefore, the Court concludes that Mr. V. was not arrested pursuant to a validly issued I-205 warrant of removal. *See Pedro Eduardo R.P. v. Bondi*, No. 26-cv-1323 (ECT/DJF), 2026 WL 473140, at *4 (D. Minn. Feb. 17, 2026) ("The Court therefore concludes that the warrant's lack of a signature by an authorized, issuing immigration agent renders the warrant legally void."), *R&R adopted*, 2026 WL 478607 (D. Minn. Feb. 19, 2026).

### B.      Timing of Issuance

Even if the I-205 warrant were valid, the timing of its issuance raises additional concerns. Mr. V. argues that the warrants used in his arrest were not issued beforehand. Immigration agents are required to obtain a warrant prior to the arrest of a noncitizen unless the agent believes that the noncitizen is likely to escape before a warrant can be obtained. 8 C.F.R. § 287.8(c)(2)(ii). For those subject to a final order of removal, the governing regulation specifically prescribes that the noncitizen "be taken into custody *pursuant to* the warrant of removal." 8 C.F.R. § 241.3(a) (emphasis added). It follows from these regulations that a warrant of removal must be issued prior to an arrest, making an I-205 issued after the fact invalid. *See Makitio G. A., v. Blanche*, No. 26-cv-2200 (ECT/DLM), 2026 WL 1584457, at *4 (D. Minn. May 22, 2026) ("[I]f a removal warrant for [the noncitizen] was not procured until . . . after his . . . arrest, that means he was arrested without a warrant."), *R&R adopted*, 2026 WL 1591270 (D. Minn. June 3, 2026); *cf. Pina C.D.B. v. Bondi*, No. 26-cv-1929 (KMM/DJF), 2026 WL 810676, at *2 (D. Minn. Mar. 24, 2026) (collecting cases holding 8 U.S.C. § 1226(a)'s "[o]n a warrant" language to require the issuance of a warrant prior to arrest). To validate Mr. V.'s arrest, Respondents must

establish that the I-205 warrant was issued beforehand. *See Pina C.D.B.*, 2026 WL 810676, at \*2–3 (collecting cases); *Francisco O. C. v. Bondi*, No. 26-cv-1231 (KMM/JFD), Dkt. 13 at 3 (D. Minn. Feb. 18, 2026) (holding that the government must "establish[] that the warrant was, in fact, issued prior to [the noncitizen's] arrest and was, in fact, served on him at the time of his arrest").

Here, Respondents have failed to establish that the I-205 warrant was issued prior to Mr. V.'s arrest.[3] In his Petition, Mr. V. alleges that he was served a warrant after his arrest but was unsure when it was issued. The narrative section of Respondents' primary declaration fails to provide any additional information, stating only that Mr. V. was "arrested and served" with the I-205 warrant, I-200 warrant, and Notice on May 5, 2026, implying that these actions occurred concurrently. (Dkt. 6 ¶ 11.) The I-205 itself is dated May 5, 2026, but does not include a time stamp.

The Record of Deportable/Inadmissible Alien ("Record") and the Notice, however, do provide insight into the timing of the events in question. Starting with the Record, the document states that Mr. V. was detained by ICE at 12:11 p.m. on May 5. (Dkt. 6-5 at 1.) The Record's narrative section suggests that the issuance of the I-200 occurred after ICE officers encountered Mr. V. (*Id.* at 2 ("[ICE officers] encountered [Mr. V.] at the United States Citizen and Immigration Services in Sioux Falls, SD. . . . [Mr. V.] was issued a Warrant of Arrest of Alien (I-200), placed into custody, and transported to the Sioux Falls

---

[3] The Court even gave Respondents a second chance to demonstrate that Mr. V. was arrested "pursuant to" a valid warrant. (*See* Dkt. 14.) As it relates to the I-205 provided to Mr. V., Respondents offered no evidence or argument to support its position on timing.

ICE ERO Office for administrative processing[.]").) What's more, the Record is completely silent on the issuance or service of the I-205, only detailing that the I-200 and Notice were provided to Mr. V. (*Id.*; *see also id.* at 3 ("DISPOSITION: ICE ERO St. Paul served [Mr. V.] with form I-200 Warrant of Arrest and ICE form 71-091.").) Confirming the Record, the Notice states that it was issued at 1:10 p.m.—an hour after Mr. V.'s arrest—and served at 3:21 p.m. (Dkt. 6-6 at 2.) The Declaration of a deportation officer submitted by Respondents offers no details on this issue and there is nothing in the record from the SDDO who purported to issue the warrant of removal.[4]

Therefore, the record leads the Court to conclude that the I-205 was not validly issued prior to Mr. V.'s arrest.[5] The I-205 itself lacks a timestamp, and Respondents have produced no evidence indicating that it was issued before Mr. V.'s arrest. Instead, the

---

[4] This timeline of events also suggests that Respondents failed to comply with the requirements governing the issuance and service of the Notice. But since other grounds have been identified to grant the Petition, the Court need not analyze these issues.

[5] Respondents attempt to point to a warrant of removal dated November 15, 2001 to justify Mr. V.'s arrest. (Dkt. 15-1.) It appears this warrant was issued shortly after Mr. V. received his final order of removal in September 2001 and prior to his stint in immigration custody in late 2001 and/or early 2002. Respondents say that while the record is "ambiguous whether the 2026 Warrant [of removal] was issued shortly prior to or shortly after Petitioner's arrest, . . . there is no ambiguity about the 2001 Warrant." (Dkt. 15 ¶ 1.) Respondents provide no legal authority supporting that a 25-year-old warrant can be reused in a circumstance like this. Respondents also provide nothing by way of establishing that Mr. V.'s arrest was made "pursuant to" this warrant, 8 C.F.R. § 241.3(a), highlighted by the fact that there is no indication that the 2001 warrant was served on Mr. V. in 2026. Moreover, the concerns with relying on a 25-year-old, possibly-already-executed, and possibly-never-served warrant of removal to establish the legality of this arrest are self-evident.

8

Record and Notice undercut any suggestion that Mr. V. was arrested "pursuant to the warrant of removal."[6] 8 C.F.R. § 241.3(a).[7]

## II.    Remedy

It is well established that when detention lacks a lawful predicate, release is an appropriate remedy. *Cesar F.F.*, No. 26-cv-2540 (PJS/DTS), Dkt. 8 at 6; *Francisco M.A.*, 2026 WL 1229701, at \*3; *see Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release.") (citation omitted). The Court therefore orders Respondents to release Mr. V. **within 48 hours** of this Order.

**ORDER**

Based on the above, **IT IS HEREBY ORDERED THAT**:

1.    The Report and Recommendation (Dkt. 10) is **ACCEPTED IN PART**;

---

[6] It is not like Respondents did not have time to validly issue the I-205 beforehand: Mr. V. was arrested while attending a scheduled appointment with ICE, which itself came on the heels of his annual OSUP check in on March 4, 2026. (Dkt. 1 ¶ 6.) Respondents had plenty of time to get their ducks in a row to validly arrest Mr. V. but nonetheless failed to do so.

[7] To the extent Respondents argue that Mr. V.'s arrest was nonetheless valid without a warrant, the Court concludes otherwise. 8 U.S.C. § 1357(a)(2) authorizes immigration agents "to arrest any alien in the United States, if [the agent] has reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation *and* is likely to escape before a warrant can be obtained for his arrest[.]" 8 U.S.C. § 1357(a)(2) (emphasis added). The record provides no evidence that Mr. V was "likely to escape before a warrant [could] be obtained": he attended annual check ins with ICE throughout his OSUP in compliance with the conditions of his release; he attended such an appointment as recent as March 2026; the day he was arrested, he was appearing for another scheduled appointment; there is nothing in the record to suggest that he has previously absconded from ICE supervision; and there is no indication that he attempted to flee or otherwise attempted to resist arrest on May 5.

2.   Petitioner Ger V.'s Petition for a Writ of Habeas Corpus (Dkt. 1) is **GRANTED**; and

3.   **Within 48 hours of the entry of this Order**, Respondents must release Petitioner with all of his personal property and file a notice on the docket confirming that Petitioner has been timely released.

**Let Judgment be entered accordingly**.

Dated: June 26, 2026                     *s/Katherine M. Menendez*
                                         Katherine M. Menendez
                                         United States District Judge

10